471 P.2d 757

**EMPLOYMENT SECURITY COMMISSION of Arizona, Appellant,**

v.

**Charlotte Ann KOSIC, Appellee.**

**No. 2 CA–CIV 790.**

Court of Appeals of Arizona, Division 2.

June 29, 1970.

Rehearing Denied July 22, 1970.

Review Granted Sept. 29, 1970.

Gary K. Nelson, Atty. Gen., by James A. Tucker and Walter Brown, Asst. Attys. Gen., Phoenix, for appellant.

Legal Aid Society of the Pima County Bar Ass'n, by Anthony B. Ching, Chief Trial Counsel and Mark B. Raven, Staff Counsel, Tucson, for appellee.

HOWARD, Chief Judge.

The Employment Security Commission of Arizona, respondent below, appeals from the judgment of the Superior Court wherein said court held that the appellee, Charlotte Ann Kosic, was entitled to unemployment benefits in the sum of $239.00.

Charlotte Ann Kosic, appellee, instituted the action below by timely filing a petition for judicial review pursuant to § 23–681, A.R.S., alleging that the decision of the Commission which affirmed the decision of the Appeal Tribunal was arbitrary and capricious.

There were two separate periods of alleged eligibility involved and both the Commission and the Appeal Tribunal held that the appellee was temporarily unavailable for work and therefore, ineligible for unemployment benefits.

The claimant for unemployment benefits, Charlotte Ann Kosic, age 29, housewife with three children ages nine, eight and six, worked for approximately six months in Tucson, Arizona, from January of 1967 until June of 1967, as a salesclerk in a department store. She had no previous employment in Arizona. Her job at the Tucson department store was only part-time work; her total earnings for the six-month period of work was $716.80. In August of 1967, the Kosic family moved from Tucson to Sells, Arizona, on an Indian reservation 61 miles from the City of Tucson. The move to Sells was required by the federal government because of her husband's employment for the Bureau of Indian Affairs as a schoolteacher on the Indian reservation in Sells. On March 25, 1968, Mrs. Kosic filed her first claim for weekly unemployment benefits.

The ruling of both the Employment Security Commission and the Appeal Tribunal was based upon the fact that Mrs. Kosic had no reasonable expectancy of obtaining employment as a salesclerk in Sells, Arizona and therefore was not available for work.

A.R.S. § 23–771 provides in part:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that:

\* \* \* \* \* \*
\* \* \* he is \* \* \* available for work."

The requirement that a claimant be "available for work" is a feature of all state unemployment compensation laws. Cramer v. Employment Security Commission of Arizona, 90 Ariz. 350, 367 P.2d 956 (1962). A split of authority has developed, however, among those state courts which have considered the question of availability in the case of a claimant who has moved to an area where employment opportunities do not exist or are severely restricted.

Some state courts have held that when a worker leaves an economically active area and moves to an area where little or no opportunity exists for work, he has made himself unavailable within the meaning of the law. See collection of cases at 13 A.L.R.2d 874, 883, including Huiet v. Schwob Manufacturing Company, 196 Ga. 855, 27 S.E.2d 743 (1943), and Wiley v. Carroll, 201 S.W.2d 320 (Mo.1947); Claim of Sapp, 75 Idaho 65, 266 P.2d 1027 (1954). We, however, believe that a better view is expressed by other courts who feel that in such situations it is the work, rather than the worker, that is unavailable. The cases holding that a worker can be "available" even though employment may be precluded by lack of job opportunities in the area to which he has moved are collected at 13 A.L.R.2d 874, 880. These include Reger v. Administrator, 132 Conn. 647, 46 A.2d 844 (1946) and Leonard v. Unemployment Compensation Board, 148 Ohio St. 419, 75 N.E.2d 567

(1947). See, also, the more recent cases of Ashmore v. Unemployment Compensation Commission, 7 Terry 565, 46 Del. 565, 86 A.2d 751 (1952), and Parsons v. Employment Security Commission, 71 N.M. 405, 379 P.2d 57 (1963).

We note that the Commission and the Appeal Tribunal dwelt at length upon whether or not the appellee was actively seeking work in *Tucson.* What the labor market was in Tucson and the availability of the appellee for work in Tucson was entirely irrelevant. There is no requirement that a claimant must be available for work in the locality in which he last worked or resided. The fact that a claimant has moved from one place to another does not form a basis for holding him unavailable for work even if it appears that his chances for employment would have been better if he had remained in his former locality. Ashmore v. Unemployment Compensation Commission, supra. Appellee's labor market area was not Tucson but rather Sells. Authoritative assistance on this subject can be derived from Mr. Ralph Altman and his book on the subject which has been cited by the Arizona Supreme Court in the *Cramer* case, supra, Availability for Work, Altman, Harvard University Press, 1950. This book contains an entire chapter on "the labor market" and in that chapter the following statement is made:

"The hiring or job-finding area is primarily local. It is this area that the United States Employment Service has in mind when it refers to a 'labor-market area'. Unlike the wage-setting area, the hiring area can be described quite specifically in terms of the space it covers. The United States Employment Service defines roughly and for working purposes as an area within which workers can and do commute regularly from their home to jobs without having to change their residence. When we think of the job-finding area for a particular point we may think of the surrounding territory *within a radius that seldom exceeds 50 miles.*" (Emphasis added.)

Arizona is committed to a liberal and not a strict interpretation of the Unemployment Compensation Act, especially regarding availability for work. In the *Cramer* case, the Supreme Court of Arizona stated that:

"The Employment Security Act is remedial and should be liberally construed in keeping with its beneficent purposes."

The purpose of the "availability" rule is set forth in *Cramer:*

"The purpose of the requirement that a claimant be 'available for work' is to test the claimant's attachment to the labor market. It is to determine if he is *unemployed because of lack of suitable job opportunities* or for some other reason such as physical incapacity or unwillingness to work." (Emphasis added.)

We believe that the "reasonable expectancy" test is not the test in Arizona and are fortified in that belief by the case of Beaman v. Safeway Stores, 78 Ariz. 195, 277 P.2d 1010 (1954) which sets forth the test of availability as follows:

"Generally, the courts test whether one is available for work by whether the claimant is able, willing and ready to accept suitable work which he does not have good cause to refuse and is genuinely attached to the labor market."

The court cites as authority for this definition two cases, one of which is Reger v. Administrator, supra. It should be noted that the Reger test of availability says absolutely nothing about a "reasonable prospect of employment" or "reasonable expectancy of obtaining employment."

We hold a labor market for an individual exists where there is a market for the type of services which he offers in the geographical area in which he offers them. The term "market" in its sense, does not mean that job vacancies

must actually exist since the purpose of unemployment compensation is to compensate for lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in a geographical area in which he is offering them. The fact that there are more persons in the area qualified for a certain type of position than there are positions of this kind to be filled does not necessarily negate the question of the existence of such a market. The question is not whether the appellee has a reasonable opportunity to give work of a kind she can do, but whether there is a "labor market" for such work.

 Under the foregoing test, the appellee was attached to a labor market in Sells, Arizona, despite the fact that there were no job vacancies there. The only evidence concerning the labor market in Sells was to the effect that there were in Sells two Indian trading posts. These were characterized by the appellee as being more like department stores; that 22 persons were employed as salesclerks in the trading posts; and that no vacancies existed. Although the Appeal Tribunal sought to show that these jobs were only available to Indians or members of the family of the owners of the trading posts, the "proof" consisted of questions posed to the appellee, only, and fell far short of any evidence whatsoever to such effect.

The appellant claims that the trial court erred in accepting as evidence, appellee's affidavit pertaining to her subsequent procurement of employment in Sells, Arizona. We agree with the appellant that under A.R.S. § 23–681, subsecs. B & C, the court erred in accepting saia testimony.[1] This error, however, was harmless since the record showed, as a matter of law, that the appellee was available for work in Sells, Arizona and was therefore, entitled to unemployment benefits.

The judgment is affirmed.

HATHAWAY and KRUCKER, JJ., concur.

---

1. The pertinent provisions of A.R.S. § 23–681, subsec. B read as follows:

    " * * * If, before the date set for hearing, application is made to the court for leave to present additional evidence on the issues in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the commission, the court may order additional evidence taken before the commission upon such conditions as the court deems proper. * * * * "

    § 23–681, subsec. C provides:

    "The review prescribed by this section shall be conducted by the court without a jury and shall be confined to the record, * * * *."