WYOMING DEPARTMENT OF EMPLOYMENT, DIVISION OF UNEMPLOYMENT INSURANCE, Appellant (Respondent),

v.

Shirley I. SECREST, Appellee (Petitioner).

No. 90–295.

Supreme Court of Wyoming.

May 28, 1991.

---

William G. Hibbler, Sr. Asst. Atty. Gen., for appellant.

Earl R. Johnson, Jr., Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

The Wyoming Department of Employment, Division of Unemployment Insurance (Division), appeals the district court's reversal of its administrative decision denying Secrest unemployment benefits.

We affirm.

The Department raises two issues:

"I. Whether the appellant, Wyoming Department of Employment, Division of Unemployment Insurance, properly disqualified the appellee, Shirley I. Secrest, from certain weeks of unemployment insurance benefits pursuant to W.S. § 27–3–313(a) (1987)?

"II. Whether the appellant, Wyoming Department of Employment, Division of Unemployment Insurance, properly allocated the lump-sum remuneration received by the appellee, Shirley I. Secrest, to disqualify her from certain weeks of unemployment insurance benefits pursuant to Chapter XXX, Regulations of the Division of Unemployment Insurance?"

The facts are not in dispute. On January 23, 1990, Secrest left her employment with the Wyoming Youth Treatment Center. A claims deputy with the Division denied Sec-

rest's application for benefits effective immediately on the grounds that her termination was the result of misconduct. Shortly after the denial of unemployment benefits, Secrest withdrew her accrued contributions to the state's retirement fund. Secrest testified that she was "forced" to withdraw her retirement contributions "[s]o that I could have something to eat— to live on." Secrest had nothing to "live on" because the Division was denying her unemployment benefits based on the charge of misconduct. The charge of misconduct was later reversed on May 25, 1990, after a hearing examiner concluded that the Youth Treatment Center had offered no evidence to substantiate the charge of misconduct; and Secrest, therefore, was entitled to receive unemployment benefits.

On March 9, 1990—before the above charge of misconduct was reversed—a claims deputy with the Division informed Secrest that:

"The Wyoming Employment Security Law provides for the denial of benefits to any individual whose retirement pay * * * exceeds their weekly unemployment insurance benefit. * * *

"On 2–24–90 you received a lump sum retirement payment which when allocated per employment security commission regulations, represents payment for 11 weeks. You are, therefore, disqualified [beginning 2–18–90] through 5–5–90 * * *."

Secrest appealed the deputy's determination to an appeals examiner. After conducting a hearing, the appeals examiner issued his ruling on April 12, 1990, affirming the denial of unemployment benefits based on Secrest's withdrawal of retirement contributions. (This hearing and the hearing on the charge of misconduct were conducted as separate hearings before different appeals examiners.)

Secrest appealed to the Unemployment Insurance Commission, which affirmed the examiner's decision. She then filed a petition for review in district court. The district court reversed the examiner's decision and ruled that

"since the petitioner did not retire, did not intend to retire, and was not retired pursuant to a mandatory retirement program, she [Secrest] should not be denied unemployment benefits nor should any offset be made because of the [retirement] payment received. The payment in question was not a retirement payment as defined by the statute."

The Division appeals the district court's order.

We recently discussed the scope of our review of agency decisions in *Union Pacific R.R. Co. v. Wyoming State Bd. of Equalization*, 802 P.2d 856 (Wyo.1990). Here we are concerned with an agency's decision on a question of law: the proper construction of W.S. 27–3–313(a)(v) (Cum. Supp.1989). In *Union Pacific R.R.* we stated that "[i]n considering an appeal from a district court's review of agency action, we are not bound by, nor must we accord any special deference to, the district court's decisions on questions of law." 802 P.2d at 859. It is also true that "[i]f the correct rule of law has not been properly applied, we do not defer to the agency's finding but correct the agency's error in either stating or applying the law." *Union Pacific R.R.*, 802 P.2d at 860–61. We find that the district court, and not the Division, correctly applied the rule of law in this case.

The unemployment insurance system is an example of " 'cooperative federalism,' in which each state receives federal funds to reimburse its costs of administering the program, and employers receive a federal tax credit for the unemployment insurance tax they pay." *Rivera v. Patino*, 524 F.Supp. 136, 140 (N.D.Cal.1981). The federal arm of the unemployment insurance system is administered under the provisions of the Federal Unemployment Tax Act (FUTA). Wyoming participates in the FUTA program. W.S. 27–3–202(b). Wyoming Statute 27–3–313(a)(v) is patterned after 26 U.S.C. § 3304(a)(15) (1988).

The hearing examiner based his ruling on W.S. 27–3–313(a)(v) (Cum.Supp.1989), which states in pertinent part:

"(a) For any week with respect to which the following situations occur or payments have been or will be received, an individual shall be disqualified from benefit entitlement if:

\*      \*      \*      \*      \*      \*

"(v) Retirement annuities, pensions or other such payments are received from any former employer or any trust or fund contributed to by any former employer. If the payments decreased to the next lower multiple of one dollar ($1.00) are less than the weekly benefit amount otherwise due under this article, the individual is entitled to benefits in an amount reduced by the payments."

The purpose of W.S. 27–3–313(a)(v), according to the Division, is to prevent "double dipping" of the Unemployment Trust Fund. The Division, therefore, argues that Secrest does not actually have to retire before the offset requirement is triggered.

We agree that the purpose of the statute is to prevent "double-dipping." We disagree with the Division's attempt, however, to apply the statute to those who are not retired. "The purpose of the federal and complementary State statutes is to prevent so-called 'double-dipping' by persons who are retired." *Tucker v. Dep't of Employment Sec.*, 122 N.H. 958, 453 A.2d 1247, 1248 (1982).

The Supreme Court of New Hampshire, citing legislative history, has succinctly described the "underlying purpose" of that state's similarly worded statute:

"This important public policy of preventing individuals who have actually retired from reaping the double benefit of receiving retirement payments and unemployment compensation is not furthered by forcing a discharged employee who is still an active member of the labor force and seeking employment to exhaust retirement benefits before qualifying for unemployment compensation." *Tucker*, 453 A.2d at 1248. *See also Redin v. Empire Oldsmobile, Inc.*, 746 P.2d 52 (Colo.App.1987).

The issue of "double-dipping" is not a concern here; Secrest has not retired. In fact, she testified that she withdrew her

retirement contributions, not to retire, but so that she "could have something to eat—to live on" while she actively sought work. If the Division had granted Secrest unemployment benefits, as it should have, she would not have needed to withdraw her retirement benefits or to put this in the agency contest. The Division's duty of safeguarding the unemployment compensation fund "from the claims of unworthy and ineligible claimants" is not thwarted by granting Secrest unemployment benefits while she actively seeks work. *Sage Club, Inc. v. Employment Sec. Comm'n,* 601 P.2d 1306, 1311 (Wyo.1979).

Today we decide only that the Division should have granted Secrest unemployment benefits and not offset them against her withdrawal of retirement contributions. Our resolution in favor of Secrest of her right to unemployment benefits without offset makes it unnecessary for us to reach the question of allocation raised by the Division in its second issue.

The decision of the district court is

Affirmed.